Merrimack, }
April 5, 1938. }

GEORGE W. CONWAY & a.

*v.*

NEW HAMPSHIRE WATER RESOURCES BOARD & a.

FRANK W. BALDWIN *v.* SAME.

*Robert B. Hamblett* (by brief and orally), for the taxpayers.

*John P. Carleton*, for the plaintiff Baldwin, filed no brief.

*Fred C. Demond* and *Robert W. Upton* (by brief and orally), for the defendants.

ALLEN, C. J.   Whether the taxpayers in their case may properly seek to enjoin the illegal expenditure of state funds, appears to present an inquiry of new impression in this forum.   Their right when the funds belong to municipal corporations is well settled.   *Blood* v. *Company*, 68 N. H. 340, and cases cited; *Clough* v. *Verrette*, **79** N. H. 356.   The better reasoning is thought to extend the right to

state appropriations and expenditures. While the State cannot be sued without its consent (*Western Union Telegraph Co.* v. *State*, 64 N. H. 265, 271; *Bow* v. *Plummer*, 79 N. H. 23, 24), and while a suit against those representing the State is one against the State when a judgment or decree against them would have the same effect as though it were directly against the State (*Bow* v. *Plummer, supra,* 24, 25), yet when the alleged or threatened wrong, though colorably the State's and in its name, is only that of its officials or agents, equity is deemed to have power to grant relief. When a law is challenged as unconstitutional, the claim is that the law is void and hence that no law has been enacted. It follows that if the legislature has not acted under authority, no action has been taken by the State, and hence when suit is brought to restrain those representing the State from carrying the void legislation into operation and enforcing it, it is not a proceeding to which the State is a party. What is forbidden by the Constitution is outside the field of state activity; restraint of forbidden action is not imposed by the courts upon the State but upon those asserting the right to take the action as though it were the State's and as though binding upon it.

While the threatened injury to the taxpayer may be slight in a suit to enjoin invalid action in the State's name, and much less than in a suit against a municipality or its officers, the degree or extent of injury does not measure principle. If collectively all the taxpayers brought suit, there would be no question of degree, and the right of all is derived from the right of each. "A slight exercise of unconstitutional power by either department of the government is not less invalid than an extensive exercise of it." *Ashuelot R. R. Co.* v. *Elliot*, 58 N. H. 451, 457. In analogous reasoning, a slight injury caused by the exercise of invalid authority should be avoided or redressed in equity jurisdiction.

The weight of authority is believed to sustain the right of the taxpayers to bring their suit. *Fergus* v. *Russel*, 270 Ill. 304; *Crawford* v. *Gilchrist*, 64 Fla. 41; *Christmas* v. *Warfield*, 105 Md. 530; *Ellingham* v. *Dye*, 178 Ind. 336; *Page* v. *King*, 285 Pa. St. 153; *Fischer* v. *Marsh*, 113 Neb. 153; *Hill* v. *Rae*, 52 Mont. 378; *Leckenby* v. *Company*, 65 Colo. 443.

The petition for a declaratory judgment sets forth a claim of right and title disputed by the defendants. But counsel for the petitioner has waived the claim in open court and now merely asks that it be determined what his right and title is as between him and the defendants. The declaratory judgment act (Laws 1929, *c.* 86) pro-

vides that one must assert a right or title to which the defendant claims adversely in order to invoke the court's judgment. There is no right to an adjudication of matters not in contention. The petition accordingly should be dismissed for lack of jurisdiction.

In *Opinion of the Justices*, 88 N. H. 484, the view was taken that the act (Laws 1935, *c.* 121) creating a Water Resources Board and providing a scheme for action by it was in its general aspects valid. The members of the court were also agreed that the plan for the project of the Pittsburg dam and reservoir, developed under the authority of the act, involved no invalid action if certain facts existed. The views set forth in the *Opinion of the Justices, supra,* are now held to have the force and standing of law announced and declared in the adjudication of litigation. In 1937 an act (Laws 1937, *c.* 118, supplemented by Laws 1937, *c.* 190) was passed amending the 1935 act in certain respects. Its general features from a constitutional viewpoint do not differ from those of the 1935 act.

In the 1935 act a declaration of its purpose to develop water was announced. The public welfare was stated to demand that the State construct projects "for the conservation, development, storage, distribution and utilization of water." The industrial and economic welfare of the State was thought in *Opinion of the Justices, supra,* to be a proper reason to develop water storage for use in creating water power. The 1937 act makes this particular purpose more emphatic by its declaration of the public need of water development to promote such welfare "by enhancing the present and potential water power along the rivers and streams."

It is argued that this is an unpermitted objective of state action because "a very limited class of private property owners" will be directly benefited by the action. The argument disregards the declared public need of the objective, and confuses the difference between the legality of the legislation and the legality of action in a particular case of application. The State clearly may engage in undertakings to develop its resources. It is no less in its interest than to conserve them; what may be saved is not the limit of legislative power; what may be produced is also a proper subject of action. Regulation of water to control floods is an authorized state enterprise, and regulation to produce water power is equally in the public interest. The needs of regulation for both purposes are present ones in the sense of preparation for the future.

"Necessity alone is not the test by which the limits of State authority in this direction are to be defined, but a wise statesmanship

must look beyond the expenditures which are absolutely needful to the continued existence of organized government, and embrace others which may tend to make that government subserve the general well-being of society, and advance the present and prospective happiness of the people." *People* v. *Salem*, 20 Mich. 452.

"In many instances States and municipalities have in late years seen fit to enter upon projects to promote the public welfare which in the past have been considered entirely within the domain of private enterprise." *Green* v. *Frazier*, 253 U. S. 233, 242. But the considered legislation in respect to power is well within the view advanced in *Rockingham County &c. Co.* v. *Hobbs*, 72 N. H. 531, 535, as follows: "All these considerations tend to show that the use of land for collecting, storing, and distributing electricity, for the purposes of supplying power and heat to all who may desire it, is a public use, similar in character to the use of land for collecting, storing, and distributing water for public needs—a use that is so manifestly public 'that it has been seldom questioned and never denied.' 1 Lew., Em. Dom., *s.* 173."

The planned private use of the power developed from storing water and employed in producing electric energy is not a forbidden aid to the users so long as it is an incidental arrangement in obtaining for the public the benefit of the storage. From the economic viewpoint coal, petroleum products, water fall, and in less degree wood and alcohol are the chief sources of the essentials of light, heat and power. The more abundant and serviceable the water fall, the less is there need for the other sources. The more of it the State may obtain through development, the less are the needs for importing the other sources. The greater its supply, the more its cost is lessened and thus a more self-supporting existence is furnished. Moreover, development of resources which may produce a supply beyond the needs of state consumption and furnish a supply for export may well be in aid of general public prosperity. Thus the economy and industry of the State and its people may fairly be considered to be advantageously furthered by measures adopted to increase the supply of water power.

The permitted private use of the State's facilities in producing electric energy therefrom is not a grant so long as the benefit to the user is not a primary objective. And the legislation authorizes no unreasonable terms of use at the expense of the State, either in the charge for the increased power or in the price to the public of the product.

It is not required that in making water storage available for increasing power there should be allied with it any other objective of water control. For practical reasons, as here, alliance may be desirable and important, but a development solely to produce or enhance power would have valid standing.

It was thought in *Opinion of the Justices, supra,* that the 1935 act provides for no projects in the nature of a business enterprise of a general nature conducted by individuals. This construction is confirmed, and in application to include the 1937 amendment. "The element of commercial enterprise is entirely lacking. The purpose of the act is neither to embark in business for the sake of direct profits . . . nor for the sake of the indirect gains that may result to purchasers through reduction in price by governmental competition. It is simply to enable the citizens to be supplied with something which is a necessity in its absolute sense to the enjoyment of life and health, which could otherwise be obtained with great difficulty and at times perhaps not at all, and whose absence would endanger the community as a whole." *Laughlin* v. *Portland,* 111 Me. 486, 500. The necessity here is not as urgent, but the character of the undertaking as diverse from that of an ordinary business venture is the same.

These considerations are largely corollary to and in expansion of those expressed in *Opinion of the Justices, supra.* In accordance therewith, the test of validity whether the act is a grant of private aid although for the general welfare, which is forbidden, or a promotion of the general welfare which incidentally benefits certain individuals and which is proper, is resolved to uphold the act. The conclusion is in contrast, but not in conflict, with that in *Lowell* v. *Boston,* 111 Mass. 454, by which certain legislation in aid of rebuilding a district burned by fire was held void.

The further position is taken that the act violates the Constitution in delegating primary legislative power. It is urged that "there is no standard established but only a general objective described," and that "this whole subject" is transferred to the executive department of the state government. In *Ferretti* v. *Jackson,* 88 N. H. 296, a test was announced that there must be a declared policy and a prescribed standard laid down by the legislature. Beyond that, regulatory and discretionary authority may be delegated to those assigned to administer the law. While the legislature may exercise its own discretion if it sees fit and provide at its will for the details of administrative action, yet also it may vest the executive board directed to carry the law into effect with concurrent discretionary functions.

So far as they are in any sense legislative, they are auxiliary to the predominant feature of administrative authority.

The policy and standard are here adequately and sufficiently prescribed. Under a policy of developing water resources, including power, projects are to be constructed at advantageous sites. The board's action in determining the sites and their number is controlled by the defined purposes for which their action may be taken. A declared policy is accompanied by a rule of conduct to govern action in furtherance of the policy. That the rule is general and the discretionary authority wide, demonstrates no invalid delegation of power. The board's discretion is not an unlimited one. By the 1937 amendment (*s.* 6) the board may proceed with the execution of a project only upon order of the Governor and Council who are first to hold an administrative hearing and determine upon the board's report containing "a detailed description and plan of the project" and "a detailed estimate of the total cost thereof and of the revenues to be derived therefrom," that the project "is of public use and benefit and within the authority conferred upon the board." The Governor and Council, constituted a fact finding tribunal on the final issue of expediency, thus are a practical check and restraint to hold the board to undertakings within the standard.

In *Ferretti* v. *Jackson, supra,* the attempted delegation was of authority, subject to slight qualification, to regulate and control the conduct of a private business in any way the administrative board might consider proper. The legislation sought to empower the board to say how individuals should act in carrying on their legitimate business by prescribing a code of fair practices in the industry. It thus went beyond provision for the efficient enforcement of the legislation in undertaking to clothe the board with power to take action primarily legislative in character. Here the authority is not to enact laws. The regulatory control is of public resources. No direction and control over private enterprise is intended to be granted, and the functions of the board are essentially executive with the area of operations clearly outlined. The end to be attained of translating water storage into power available and ready for use is a specific goal on the laid out course to which the board has properly been granted authority to proceed in its own way.

A broad range of discretion delegated and a generality of the standard are to be found in statutes affecting other subjects of the general welfare. Without expressing opinion upon the validity of the act (Laws 1937, *c.* 180) providing that the Governor and Council

may purchase real estate for any "public improvement" purpose, the act (Laws 1937, *c.* 107) creating a milk control board with authority to establish marketing areas where the act should be operative and deemed in *Opinion of the Justices*, 88 N. H. 497, to overcome the objection of invalid delegation held in *Ferretti* v. *Jackson, supra,* to inhere in the prior legislation on the subject, the act (Laws 1929, *c.* 31) empowering the fish and game advisory board to shorten or close open seasons for fishing and hunting in places where it was found necessary to preserve and maintain the supply, and held valid in *Musgrove* v. *Parker,* 84 N. H. 550, the act (Laws 1933, *c.* 143) under which the State Forestry Commission with the consent of the Governor and Council may purchase "suitable tracts of land for use for public reservations" for recreational and park purposes, the act (Laws 1936, Sp. Ses., *c.* 1) providing for flood relief, the numerous acts under which the State Highway Department may designate highways to be maintained, located, aided, and discontinued by the State, and the act (P. L., *c.* 116) giving the State Board of Education corporate "management, supervision and direction over all public schools," may be cited as a few examples of comparable and similar legislation granting a wide exercise of its manner of enforcement, the validity of which either has been sustained or would seem to be unaffected by the objection of non-delegability.

The further claim that the act delegates the power of appropriation is unfounded. The 1935 act (*ss.* 17, 18) limits the amount of money to be supplied by or on the credit of the State. Debts and obligations beyond such amount the State has in effect declined to assume or promise to pay. The board may use the revenues from its projects to pay for their construction and maintenance, and such revenues are its property. While the board is a state agency, it has a distinct legal existence, the same as a municipality. *Opinion of the Justices,* 88 N. H. 484, 492.

It remains to be considered whether the plan for the Pittsburg project is an undertaking within the authority of the act. All procedural requirements have been followed, but objections are raised that the development of water storage, as an integral part of the project, is not a public use, that the purpose of the project in such respect is predominantly to aid private industry, and that the proposed contracts with users of power on the river are unauthorized.

By the amendment to the 1935 act (Laws 1937, *c.* 118, *s.* 3) the Governor and Council are constituted an administrative tribunal to decide whether a project planned by the board "is of public use and

benefit and within the authority conferred" before the project may be commenced. The tribunal has decided in favor of the project. In a direct proceeding to review its action its findings are final if based on no errors of law. *Aetna Casualty &c. Co.* v. *Sullivan*, 83 N. H. 426, 430; *Labonté* v. *Berlin*, 85 N. H. 89, 94. How far its action is thus reviewable in a collateral proceeding and whether the taxpayers' bill is a collateral or direct proceeding in attack on its action, are questions not here requiring determination. If the exercise of authority to review by the trial court was proper, the exceptions taken to the court's rulings and findings sustaining the action of the Governor and Council are to be overruled.

The legislature has declared that the "utilization" of water "by enhancing the present and potential water power," in promotion of the State's "industrial and economic welfare," is for "the public interest, welfare and necessity." As already appears, there is no constitutional bar of a policy thus to develop water power, and the legislative declaration of the policy establishes it. A particular project is within the policy if it is of "public use and benefit"; in determining this issue the inquiry is not of law, but of fact. "A detailed description and plan of the project, a detailed estimate of the total cost thereof and of the revenues to be derived therefrom" are to be considered. The policy is not in issue, but whether from a practical and useful standpoint the plan for the project is wise or not, is to be found. If the investment will probably yield enough in return to eventually pay for it, it may be approved. If the prospects are that the use and benefit to the public are less than the burdens to be assumed, then the plan is to be rejected. By section 4 of the 1937 amendment projects are to be "so far as possible self-liquidating and self-supporting," and the purpose that projects for water power development shall not be undertaken unless they show a reasonable promise to pay for themselves is insistent. And any project must be found to be one which will produce useful and beneficial service to the public. It is to these features of the act, and not to its general policy, that the Governor and Council are to give their attention. Upon the evidence before them the plan under consideration was reasonably found to provide for a project which will be of public use and benefit, within the statutory test thereof. The expectation is fair that within the enacted limit of fifty years the project will be fully paid for, with the State reimbursed for any expense incurred, and with flood protection and other benefits gained, aside from the power development through water storage.

The Governor and Council have also found that the principal purposes in the plan are to control flood water and to regulate water flow. The regulation of water flow is planned in order that more electric energy for public use in the State may be generated at private water power sites on the Connecticut River. It is asserted that because no present public need exists for an increased production of electric energy and the potential need of it for a long time to come is slight, a primary purpose of the plan is to aid private industry. This is not a required conclusion. Looking ahead at some range into the future, a present need for an increased supply of such energy for use in the State may be reasonably found. The project for flood control only, clearly a present need, could be neither self-supporting nor self-liquidating. To give it such a standing its enlargement to include water storage for power use is demanded. With the prospect of some need for public use of additional electric energy in the course of time considered in connection with the order for doing what may be done to relieve the State from expense for a project, the finding that the private benefits to producers of electric energy are not the "motivating" reason for the project but "merely the means" relied upon to obtain the public benefits of flood control and water storage "without ultimate expense to the state," is a reasonable one. The private users of the developed power from water storage may properly derive incidental benefit, as an inducement to contract for the stored water; aid to them is not a reason for planning the project, but is an item of the plan essential to make its execution feasible and practical in the State's interest. The cheaper and more available the supply of water for power, necessarily in eventual outcome the cheaper and more abundant the supply of electric energy will be for public use. The evidence is adequate to support the finding as to the board's purpose.

As in respect to the finding of public use and benefit, that of the board's authority to construct the project and enter into the proposed contracts is factual in character. The legislation sets forth and defines its authority, and the project and contracts are authorized if the conditions and requirements for their respective construction and making have been observed. The finding that they have been adhered to is amply supported by the evidence.

*Bill and petition dismissed.*

**All concurred.**