Merrimack
No. 83-336

RUSSELL F. TILTON *& a.*

v.

JOHN D. DOUGHERTY *& a.*

March 27, 1985

*Orr & Reno P.A.*, of Concord (*Richard B. Couser* on the brief and orally), for the plaintiffs.

*Gregory H. Smith*, attorney general (*James A. Sweeney*, attorney, on the brief, and *Bruce E. Mohl*, assistant attorney general, orally), for the defendants.

BROCK, J.   The defendants in this case are an attending physician, a commander of a dispensary, and a medical technician, all of whom are members of the New Hampshire Air National Guard. The plaintiffs brought suit in tort in October 1980 alleging negli-

gence in the performance of a routine flight physical examination performed or assisted by the defendants. All parties agree that at the time of the alleged injury the defendants were acting in their capacities as members of the National Guard, and within the official scope of their normal duties. The issues presented are whether the common-law doctrine of sovereign immunity, RSA chapter 99-D (Supp. 1983), or RSA 110-A:77, I (repealed by Laws 1981, 434:2) (superseded by RSA chapter 110-B (Supp. 1983)) bar this cause of action. We hold that neither of them does.

We note initially that the status of the plaintiff, Russell F. Tilton, while undergoing the physical examination, is in dispute. Tilton is both a civilian technician with the United States Army National Guard and a Lieutenant Colonel in the New Hampshire Army National Guard. For each position, Tilton was required to be a qualified pilot on flying status, and maintenance of that status requires an annual physical examination. If Tilton was injured while in his status as a State employee, the defendants, also State employees, may raise other defenses which are not pertinent if Tilton was injured while in federal civilian status.

█ The recommendation of the Master (*Walter L. Murphy*, Esq.) that the defendants' motion to dismiss be granted on the ground of sovereign immunity was approved by the Superior Court (*Dunn*, J.) on July 19, 1983. On an appeal from the granting of a motion to dismiss, we take as true all facts well pleaded, and construe all reasonable inferences therefrom in the light most favorable to the non-moving party. *City of Berlin v. State*, 124 N.H. 627, 630, 474 A.2d 1025, 1027 (1984). Thus, for this appeal we assume as true the plaintiffs' allegation that Tilton was injured while in federal civilian status.

We also assume as true the following pleaded allegations. On September 9, 1978, Tilton underwent a routine flight physical examination required to maintain his pilot's license for both civilian and military purposes. The defendant Dr. John D. Dougherty conducted the physical examination. In the course of the physical, Dougherty injected a chemical, Hemoccult, into Tilton's eye, causing damage to the eye. Hemoccult is a caustic solution, combining hydrogen peroxide and alcohol, and is intended to be used for the preservation or examination of stool specimens. Dougherty injected Hemoccult rather than the chemical Ophthetic into Tilton's eye, due either to the mislabeling of the bottles or to neglect in the storing and the use of the chemicals. Dougherty failed to observe the injury promptly, despite Tilton's complaint of pain, and failed to take prompt remedial measures upon discovery of the injury.

The plaintiffs further allege that the defendant Thomas P. Habif, commander of the dispensary at which the physical examination was taken, was negligent in his command, control and supervision of the dispensary and dispensary personnel, and that the defendant Russell E. Hunter, a medical technician, was negligent in his preparation of the examining room for Tilton's physical examination.

The pleadings conclude that the harm which Tilton has suffered as a result of the injury includes severe and permanent damage to his eyesight, the inability to pass a flight physical for piloting an aircraft for military or civilian purposes, and lost employment with both the United States and the New Hampshire Army National Guards.

The plaintiff Florette R. Tilton, the wife of Russell F. Tilton, has alleged the same facts against each defendant, and claims personal injuries, as well as the loss of consortium and loss of the services, society and companionship of her husband. The plaintiffs have also named Allergan Pharmaceuticals, Inc. as a defendant, but the issue on this appeal does not involve that defendant.

The defendants argue that the actions involved in this appeal have been brought against State employees in their capacities as members of the New Hampshire National Guard and as a result of allegedly negligent conduct within the scope of their employment. The defendants contend that the actions are therefore in essence actions against the State and barred by sovereign immunity. The defendants are more than mere nominal defendants, however, who are being sued due to their status as agents of the State and for actions in which the State is the real alleged tortfeasor. It is clear from the pleadings taken as a whole that the Tiltons are suing the defendants for their personal and individual acts of negligence.

Although the parties have used the term "sovereign immunity" to describe the defense that has been raised, it would be more accurate to describe it as a plea of official immunity. Sovereign immunity in the strict sense may be claimed by the State itself. The doctrine comprises two separate rules, which traditionally have shielded the State. The first is that the State is immune from suit in its own courts without its consent. *E.g.*, *Sousa v. State*, 115 N.H. 340, 342, 341 A.2d 282, 283 (1975). The second is that the State is immune from liability for torts committed by its officers and employees. *Id.*

Official immunity is considered a distinct doctrine that shields State officials and employees themselves. *See* W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 132 (4th ed. 1971). In this State it has been described as a derivative or extension of the doctrine of

sovereign immunity. *See Krzysztalowski v. Fortin*, 108 N.H. 187, 188, 230 A.2d 750, 751–52 (1967) (quoting N.H. JUDICIAL COUNCIL, FOURTH BIENNIAL REPORT 34 (1952)); RSA 99-D:1 (Supp. 1983).

■ Official immunity, like sovereign immunity itself, rested on a common law basis in this State until the enactment in 1978 of RSA 99-D:1, Laws 1978, 43:1, which adopted both doctrines "as the law of the state," except where a statute might provide an exception. *Id.* The contents and scope of the doctrines as adopted by the legislature are not described in the statute itself, and we are aware of no legislative history indicating the legislature's assumptions. It is reasonable to infer, therefore, that when the legislature placed the doctrines of sovereign and official immunity on a statutory basis it intended to adopt the common law of the State as it existed at the enactment of the statute in 1978. *See Niemi v. Railroad*, 87 N.H. 1, 10, 173 A. 361, 366 (1934).

■ The scope of the State's sovereign immunity in the area of tort liability was clear under the State's common law, and is therefore clear under RSA chapter 99-D (Supp. 1983). Since sovereign immunity from tort liability was not limited to the exercise of governmental, as distinguished from "proprietary," functions the immunity was virtually plenary. *See Niles v. Healy*, 115 N.H. 370, 372, 343 A.2d 226, 227–28 (1975); *Krzysztalowski v. Fortin, supra* at 189, 230 A.2d at 752. *Cf. Merrill v. Manchester*, 114 N.H. 722, 725, 726, 332 A.2d 378, 381 (1974) (municipalities' immunity from tort liability depends on nature of function).

The scope of official immunity from tort liability was less clear. In part, this was because the term "official immunity" was used to refer to two separate doctrines. The first such doctrine was that a State official sued in his official capacity was treated as identical with the State itself, for purposes of immunity. *Sargent v. Little*, 72 N.H. 555, 556, 58 A. 44, 44 (1904). When "official immunity" referred to this doctrine, such immunity was literally derivative from sovereign immunity and coextensive with it. *See Krzysztalowski v. Fortin*, 108 N.H. at 188, 230 A.2d at 751–52; *Bow v. Plummer*, 79 N.H. 23, 24–25, 104 A. 35, 35–36 (1918); N.H. JUDICIAL COUNCIL, FOURTH BIENNIAL REPORT *supra*. Official immunity in this sense is not involved in the present case. The defendants have not been sued in their official capacities, but rather have been sued *personally* for money damages, for negligence arising out of performance of their *official* duties.

The second doctrine of official immunity was that officials were to some degree immune from liability when sued personally for damages for torts committed while acting within the scope of their offi-

cial duties. *E.g., Sweeney v. Young*, 82 N.H. 159, 131 A. 155 (1925) (officers acting within their jurisdiction in judicial or quasi judicial capacity are immune from tort liability). It is "official immunity" in this sense that the defendants in this case have raised as a defense in their motions to dismiss. Such immunity does not rest, however, on the same principles that supported sovereign immunity. Immunity from suit in the State's own courts would not apply, for example, to an individual acting in a judicial or quasi judicial capacity. *See Williams v. Weaver et al.*, 75 N.Y. 30, 33–34 (1878) (if tax assessors act without jurisdiction, there is no immunity), *aff'd*, 100 U.S. 547 (1879), *cited in Boody v. Watson*, 64 N.H. 162, 165, 9 A. 794, 797 (1886). For this reason it was not possible at common law, and it is not possible under RSA chapter 99-D (Supp. 1983), simply to apply "sovereign immunity" to defeat a claim for damages brought against a State official or employee, although there are dicta in some cases that could suggest otherwise. *See, e.g., Niles v. Healy supra; Krzysztalowski v. Fortin supra.*

Since there was no simple identity of scope of sovereign and official immunity, the scope of the latter doctrine in cases of damages actions against officials personally was a subject to be worked out on policy grounds on a case by case basis. *See* W. PROSSER *supra.* Cases decided before the passage of RSA chapter 99-D, however, had not determined whether official immunity would bar action against these defendants. Therefore, the legislature's intent to place the existing doctrines of sovereign and official immunity on a statutory basis in RSA chapter 99-D does not provide a basis for deciding this case.

The issue before us is therefore one of first impression in this jurisdiction, and we must determine whether the doctrine of official immunity should be applied to defeat the claims against these defendants. This is necessarily a policy judgment, and in making it we will apply two general principles. The first is that those whom the State calls upon to exercise judgment and discretion cannot reasonably be expected to face the possibility of personal liability whenever that judgment proves to be imperfect. *See, e.g., Sweeney v. Young, supra* at 162–63, 131 A. at 157–58; W. PROSSER *supra.* That principle is not rendered inapplicable by statutes like RSA chapter 99-D (Supp. 1983), which provide indemnification for any verdicts that might be rendered against these defendants, *see* RSA 99-D:2 (Supp. 1983). Such officials could not exercise independent discretion if they had to fear retribution from the government that would have to pay the judgment.

The second principle that we apply is that sovereign immunity and its related doctrine should not be extended any further than the

prior law has extended them. *See Krzysztalowski v. Fortin,* 108 N.H. at 189, 230 A.2d at 752. Sovereign immunity itself has been rejected by some members of this court, and whatever future the doctrine may have depends on the merits of the legislative response to the widespread dissatisfaction with it. *See State v. Brosseau,* 124 N.H. 184, 185, 470 A.2d 869, 874–75 (1983).

■ Applying these principles, we note again that the parties have cited no prior case in this jurisdiction which extends immunity to officials charged personally with negligence in the performance of acts that require no deliberation, judgment, exercise of discretion, or choice of policy. Consequently, we will not extend the doctrine to apply to liability flowing from the performance of such acts.

■■ The present defendants may not, therefore, plead official immunity as a defense to the plaintiffs' claims. The administration of testing fluids, the maintenance of the laboratory and its laboratory supplies, and the preparation for routine examinations do not call for deliberation, discretion, judgment or policy choice. *Cf. State ex rel. Eli Lilly & Co. v. Gaertner,* 619 S.W.2d 761, 765 (Mo. Ct. App. 1981) (decision to administer medicine did not go to the essence of governing). Similarly, the claim that the defendant Dougherty failed to observe and treat the injury promptly, upon Russell Tilton's complaint of pain, is a claim of mere inaction or inattention rather than a claim that the defendant exercised discretion negligently. We therefore hold that official immunity is no defense to these actions.

■ We wish to emphasize that we do not decide today whether the discretionary character of official action that may support an immunity claim must involve the exercise of a governmental function. *Cf. Merrill v. Manchester,* 114 N.H. at 729, 332 A.2d at 383 (municipalities "are immune from liability for acts and omissions constituting (a) the exercise of a legislative or judicial function, and (b) the exercise of an executive or planning function involving the making of a basic policy decision . . . characterized by the exercise of a high degree of official judgment or discretion." (Citations omitted.)) Thus we do not decide whether there are any acts that may be done by a State employee practicing medicine as his official State duty that would justify a plea of official immunity. *Cf. Chasse v. Banas,* 119 N.H. 93, 96–97, 399 A.2d 608, 610 (1979) (statutory waiver of "sovereign" immunity as defense to actions against individual physicians). We hold today simply that the acts allegedly performed by these defendants did not occur in the course of discharging duties requiring discretion, judgment or choice of policy, and therefore cannot support a claim of immunity.

Finally, we must determine whether RSA 110-A:77, I, bars the Tiltons' claims. RSA chapter 110-A was repealed by Laws 1981, 434:2 and was superseded by RSA chapter 110-B (Supp. 1983). We refer to RSA 110-A:77, I, because that statute was in effect at the time these actions were brought. *See Holte v. Rondeau*, 105 N.H. 304, 305, 199 A.2d 100, 101 (1964).

RSA 110-A:77, I, provided:

> "No officer or enlisted person *shall be liable*, either civilly or criminally, for any damage to property or injury to any person, including death resulting therefrom, caused by him or by his order, while performing a military duty lawfully ordered under any provision of this chapter, unless the act or order causing such damage or injury was manifestly beyond the scope of the authority of such officer or enlisted person."

(Emphasis added.) The legislative history of RSA chapter 110-A indicates that the legislature has always been concerned with allowing injured parties to seek relief, whether from the State or the federal government, while at the same time it sought to protect national guardsmen from personal liability. *See* Laws 1957, 147:1, amended by Laws 1961, 64:1; N.H.S. JOUR. 291 (1961); *see also Leary v. McSwiney*, 103 N.H. 85, 88, 166 A.2d 118, 120 (1960). In light of this legislative intent, we construe the immunity from liability provided by RSA 110-A:77, I, as protecting the national guardsman from personal out-of-pocket loss, but we do not construe this provision as barring these plaintiffs from bringing suit against these defendants. This interpretation is consistent with RSA chapter 99-D (Supp. 1983), which expressly includes members of the New Hampshire National Guard among those parties for whom the State will provide a defense and indemnification from claims or civil actions which seek damages for negligent or wrongful acts.

In light of our determination that the doctrine of official immunity is inapplicable to the present case, we need not reach the question of the constitutionality of the doctrine, nor need we discuss whether RSA chapter 541-B (Supp. 1983), establishing a State Board of Claims, establishes a limited waiver of sovereign immunity in cases before that board, where the plaintiffs may constitutionally be required exclusively to proceed.

In summary, neither the doctrine of official immunity nor the provisions of former RSA 110-A:77 bar the maintenance of this action. Since the State has apparently raised no question concerning the applicability of RSA 99-D:2 (Supp. 1983), it will be obligated to

represent the defendants and satisfy any judgment that may be entered against them. Although counsel have referred to a possible obligation of the government of the United States to indemnify the State for the cost of satisfying any such judgment, such an indemnity is not the subject of this appeal. We therefore express no opinion about it.

*Reversed and remanded.*

SOUTER, J., concurred; BATCHELDER, J., concurred in the result; KING, C.J., and DOUGLAS, J., did not sit.