Merrimack
No. 2003-641

NEW HAMPSHIRE MOTOR TRANSPORT ASSOCIATION

v.

THE STATE OF NEW HAMPSHIRE & a.

Argued: February 11, 2004
Opinion issued: April 19, 2004

*Preti, Flaherty, Beliveau, Pachios & Haley, PLLC*, of Concord (*Daniel P. Luker* and *Michael Kaplan* on the brief, and *Mr. Kaplan* orally), for the plaintiff.

*Peter W. Heed*, attorney general (*Craig S. Donais*, assistant attorney general, and *Mark P. Hodgdon*, senior assistant attorney general, on the brief, and *Mr. Hodgdon* orally), for defendants State of New Hampshire and Commissioner, New Hampshire Department of Transportation.

*Office of Corporation Counsel*, of Nashua (*David R. Connell* on the brief), for City of Nashua, as *amicus curiae*.

*Eugene F. Sullivan III*, of Concord, by brief, for Nashua Regional Planning Commission, as *amicus curiae*.

*Thomas F. Irwin*, of Concord, on the joint brief, for Conservation Law Foundation, and *Baldwin, Callen & Hogan, PLLC*, of Concord (*Jed Z. Callen* on the joint brief) for Greater Portsmouth Chamber of Commerce and New Hampshire Railroad Revitalization Association, as *amici curiae*.

*Wiggin & Nourie, P.A.*, of Manchester (*William J. Edwards* on the brief), for Associated General Contractors of New Hampshire, as *amicus curiae*.

BRODERICK, C.J. The plaintiff, New Hampshire Motor Transport Association (Association), brought this equitable action challenging the State's expenditure of funds under Part II, Article 6-a of the New Hampshire Constitution for purposes of planning and constructing the Nashua Commuter Rail Project (Rail Project). The Association and the defendants, the State of New Hampshire and the Commissioner of New Hampshire Department of Transportation, filed a joint request for interlocutory transfer without ruling which the Superior Court (*Fitzgerald*, J.) granted. The questions of law presented are: (1) whether Part II, Article 6-a of the State Constitution prohibits expenditures of highway funds on some or all of the components of the Rail Project; and (2) whether funds collected pursuant to Part II, Article 6-a may be properly expended by the State on public transit projects. We hold that expending Part II, Article 6-a highway funds for the Rail Project is unconstitutional. To the extent that the second question encompasses public transit projects beyond the Rail Project, we decline to answer it because the factual record before us is insufficient.

The Association is a nonprofit New Hampshire corporation consisting of New Hampshire companies involved in trucking or other motor transportation businesses. The New Hampshire Department of

Transportation (NHDOT) is the State agency responsible for planning, developing and maintaining New Hampshire's public highways and other transportation infrastructure including railroads, air service and mass transit. RSA 21-L:2 (2000). NHDOT is currently involved in a series of projects to extend the Massachusetts commuter rail line from Lowell, Massachusetts, to Nashua. The projects, known collectively as the Nashua Commuter Rail Extension Project, involve the development, construction and acquisition of real estate, facilities and rail equipment. The total cost to New Hampshire of its share of the project is estimated to be approximately $12 million.

Part II, Article 6-a of the New Hampshire Constitution, titled "Use of Certain Revenues Restricted to Highways," provides:

> All revenue in excess of the necessary cost of collection and administration accruing to the state from registration fees, operators' licenses, gasoline road tolls or any other special charges or taxes with respect to the operation of motor vehicles or the sale or consumption of motor vehicle fuels shall be appropriated and used exclusively for the construction, reconstruction and maintenance of public highways within this state, including the supervision of traffic thereon and payment of the interest and principal of obligations incurred for said purposes; and no part of such revenues shall, by transfer of funds or otherwise, be diverted to any other purpose whatsoever.

Funds collected pursuant to Part II, Article 6-a (Article 6-a funds) have already been expended by the State to pay for its share of the current cost of the Rail Project. The State intends to use additional Article 6-a funds for the design and construction of both a railroad station and a park and ride facility in Nashua, as well as to complete construction of the Rail Project, procure a "train set," and provide a three-year operating subsidy for the railroad.

## I

The defendants argue that expenditure of Article 6-a funds on the Rail Project falls within the permissible transportation purposes outlined in the Constitution because: (1) railroads constitute public highways within the meaning of Article 6-a; (2) air quality problems created by highway users will be remediated; and (3) railroads present their own direct benefits to highway users. The Association argues that the New Hampshire Constitution plainly precludes the expenditure of Article 6-a funds on passenger rail projects because such projects are not "exclusively for the

construction, reconstruction and maintenance of public highways within the state."

In construing a provision of the State Constitution, we examine its purpose and intent. "Reviewing the history of the constitution and its amendments is often instructive, and in so doing, it is the duty of the court to place itself as nearly as possible in the situation of the parties at the time the instrument was made, that it may gather their intention from the language used, viewed in the light of the surrounding circumstances." *Warburton v. Thomas*, 136 N.H. 383, 387 (1992) (quotation omitted). "[T]he language used ... by the people in the great paramount law which controls the legislature as well as the people, is to be always understood and explained in that sense in which it was used at the time when the constitution and the laws were adopted." *Opinion of the Justices*, 121 N.H. 480, 483 (1981).

Article 6-a was adopted at a State Constitutional Convention in 1938. Minutes from the Journal of the Convention are instructive on the intent of those who sought its passage. Mr. McDaniel of Nottingham observed:

> We feel that in view of the action that has been taken in many other states regarding gasoline taxes, motor vehicle taxes and other revenues, and in view of the fact that there was quite a serious attempt during the last session of the legislature to use those fees for other purposes than for highway purposes that we should have a constitutional amendment that would prohibit the use of motor vehicle taxes and gasoline taxes being used for any purpose but for highways.

JOURNAL OF CONSTITUTIONAL CONVENTION 138 (May 25, 1938). Mr. Emerson of Milford noted:

> We all know that every automobile owner in the State of New Hampshire pays substantial sums for the upkeep and the building up of our highway system. We also know as we look abroad that in other states sums out of these road tolls, as we might call them, are being diverted for other purposes. In the State of New Hampshire an attempt has already been made to divert some of these funds. Such diversions should not be permitted.

*Id.* at 141. Mr. Holden of Hanover offered the following rationale for the amendment:

The object of this resolution is to make secure for highway purposes the revenue received from motor vehicle charges, which are paid by one group of people, who in addition also pay general taxes in common with other residents of the State of New Hampshire. . . .

It also would help in relieving the tax burden, because it prohibits the expenditure of motor vehicle revenues to new types of expenditures. It thereby relieves the taxpayers from paying that additional amount which would be necessary to make up for the amount of money diverted. . . .

. . . .

. . . I feel that this body, which is representative of the entire State of New Hampshire, will wish to vote for this resolution so that the people themselves shall have an opportunity to say whether they wish to have the money, which they as owners and operators of motor vehicles pay, spent on the highways.

*Id.* at 143-45. Finally, Mr. Page of Gilmanton commented:

One of the finest things the last legislature did . . . was to establish a secondary road system in this state, as proposed by the highway department after considerable study. As you probably realize . . . the secondary road system is not half built . . . and all the taxes from gasoline revenues will be needed for the building of that system for many years to come. . . .

. . . The conditions are such that a lot of money has yet to be spent in the state of New Hampshire on its roads, and it ought not to be diverted to anything else.

*Id.* at 140-41.

These reported statements make clear that the resolution was initiated to prevent motor vehicle fees and taxes from being siphoned away from highway uses. Nowhere do the recorded comments suggest that the State highway system encompassed the State rail system. To the contrary, the obvious, common-sense conclusion to be drawn from the minutes is that the purpose of Article 6-a was to protect funds raised from fees associated with automobile ownership and use from being diverted to purposes not directly benefiting those who paid the fees. The amendment established a funding source for the construction, reconstruction and maintenance of the State road system, nothing more.

Numerous unsuccessful attempts have been made to amend the constitution to allow Article 6-a funds to be spent for public and mass

transit projects, including passenger rail. In 1971, a proposed constitutional amendment to Article 6-a to provide that "the revenues and taxes received from the operation of motor vehicles [be deposited] in the general fund of the state instead of being restricted for use of highway construction, reconstruction and maintenance as is now required" was defeated. N.H.H.R. JOUR. 451 (1971). In 1973 and 1975, proposals to broaden the permissible expenditure of highway funds for general transportation purposes were also defeated. N.H.H.R. JOUR. 275 (1973); N.H.H.R. JOUR. 276 (1975).

In 1992, a proposed constitutional amendment calling for excess motor vehicle revenues to "be appropriated for public transportation" was voted down. N.H.H.R. JOUR. 551 (1992). Representative Alukonis, speaking for the Public Works Committee, stated that "[t]he majority of those who testified in favor of [the amendment] spoke of the need for passenger rail service throughout the state," and noted that "[s]hould the Legislature choose to pursue mass transit via railway systems, other existing funding mechanisms are already in place such as the railroad tax . . . . The Attorney General's office has indicated that the current language of Article [6-a] of the constitution would not prohibit the use of those funds for transit systems . . . which use roadways." N.H.H.R. JOUR. 551-52 (1992).

In 1993, another amendment to Article 6-a was offered to provide that highway fund monies could be "appropriated for public transportation." N.H.H.R. JOUR. 125 (1993). This, too, was defeated. Representative Chandler of the Public Works Committee noted that the majority of the committee felt that there should not be a diversion of the highway fund to "rail and other modes of travel" and that a "general fund or tax or fee paid by users of a particular method of travel would be a more appropriate method of financing these ventures." N.H.H.R. JOUR. 125-26 (1993). In 1995, an amendment calling for highway funds to "be appropriated for transportation" was likewise defeated. N.H.H.R. JOUR. 282 (1995). Representative Arndt noted that the proposed amendment would "dilute the money from the highway system which presently does not have enough money to adequately fund our highway needs. In great part, our economy depends on tourist dollars. Consequently, it is vital for our economy that our highway system be fully funded." *Id.*

In 1992, the attorney general's office was requested by the assistant commissioner of DOT to provide a legal opinion on whether highway funds, subject to the restrictions of Article 6-a, could properly be spent for public bus or rail transportation programs. The attorney general concluded, "[a]fter a somewhat lengthy review of this issue," that:

the use of highway funds to pay for public bus *or rail* transportation programs would ... run afoul of Article 6-a. Although an argument could be made that public transit expenditures benefit highway users by relieving traffic congestion and minimizing the physical deterioration of highways, these beneficial effects are both indirect and difficult to quantify in any meaningful way. Such expenditures would primarily benefit the users of public transportation rather than the highway users who had paid the revenues into the "highway fund."

N.H. ATTY. GEN. OP. No. 91-10 (October 28, 1992) (emphasis added).

We have been asked on several occasions to interpret the constitutional appropriateness of the expenditure of Article 6-a funds. On each occasion, we have narrowly construed its scope. In defining what constitutes a highway purpose, we have upheld Article 6-a expenditures to reimburse a utility company for costs involved in relocating facilities associated with moving a highway because such relocation was deemed an integral part of highway improvements, *see Opinion of the Justices*, 101 N.H. 527, 530-31 (1957). We have also approved the expenditure of Article 6-a funds for the construction of public parking facilities because they are an essential part of the public highway system, *see Opinion of the Justices*, 109 N.H. 396 (1969). Similar authority was acknowledged for operating costs incurred by a division of the state police under the department of safety so long as the money expended was reasonably related to the amount of work devoted to enforcement of traffic laws on the State's highways. *See Opinion of the Justices*, 117 N.H. 300, 302-04 (1977). Proposed legislation to use Article 6-a highway funds for transportation to aid elderly and handicapped citizens was, however, held unconstitutional because it did not benefit the highway user in the capacity of highway user but, rather, assisted only the elderly and handicapped. *See Opinion of the Justices*, 117 N.H. 655, 658 (1977). There, we explained that Article 6-a has "consistently been held to limit the expenditure of funds derived from the regulation of motor vehicles to highway purposes." *Id.* at 657.

■ The defendants rely upon several railroad cases from the 1800s, in which we determined that railroads would be considered public highways, to support its position that the term "public highways," as used in Article 6-a, includes railroads. The issue is not, however, whether railroads have been equated with public highways in certain legal contexts all predating the use of motor vehicles, but, rather, whether the specific intent of the framers in 1938 was to include railroads within the meaning of "highway

purposes." Giving due consideration to the plain language of the constitutional provision, its legislative history, the 1992 opinion of the Attorney General and our own prior opinions, we hold that Article 6-a was designed to insure that highway funds would be used exclusively for highway purposes and that such purposes do not include railroads. When Article 6-a was adopted, the term "public highways" was understood to include public roads used by motor vehicle traffic. The intention behind Article 6-a was to insure that certain fees and taxes paid by citizens for the privilege of operating motor vehicles on the State's roadways would be expended only upon those items that benefit the highway system exclusively. The use of highway funds on the Rail Project falls outside this mandate.

■ The defendants and *amici* argue that policy considerations and transportation needs compel the conclusion that the Rail Project falls within the permissible transportation purposes that can be funded from Article 6-a highway funds. The purported public benefit of the proposed Rail Project, however, is not a consideration which we can employ in construing the intended scope of Article 6-a. *See Opinion of the Justices*, 117 N.H. at 658; *Concord Railroad v. Greely*, 17 N.H. 47, 52 (1845). Public transportation policy in 2004 cannot be used as a factor in construing constitutional intent in 1938.

■ The defendants also argue that even if we do not consider railroads as public highways, Article 6-a funds can be appropriately spent on air quality compliance and mitigation requirements. They contend that these activities constitute permissible highway purposes in connection with the Rail Project because they benefit highway users. Article 6-a provides, however, that all revenue accruing to the State from the enumerated fees and taxes shall be used "exclusively for the construction, reconstruction and maintenance of public highways within this state." Improved air quality and mitigation measures do not exclusively benefit highway users in their capacity as highway users but, rather, bestow a general benefit on all citizens of the region. Similarly, while the Rail Project will presumably benefit those who ride the train, those passengers may or may not include highway users. The benefit, therefore, is not one "exclusively" for highway purposes. The question whether Article 6-a funds may properly be expended by the State on public transit projects generally, encompasses issues beyond the factual record submitted in this case and we therefore decline to address it.

## II

The Association has requested reimbursement by the State for its costs, expenses and reasonable attorney's fees incurred in seeking to require the State to comply with Article 6-a. Although sovereign immunity bars the award of costs, it does not preclude the award of attorney's fees. Such an award is justified in this case. *Claremont School Dist. v. Governor (Costs and Attorney's Fees)*, 144 N.H. 590, 593-94 (1999).

■ Attorney's fees have been awarded in this State based upon two separate theories: "bad faith litigation" as established in *Harkeem v. Adams*, 117 N.H. 659, 690-91 (1977), and "substantial benefit" as articulated in *Irwin Marine, Inc. v. Blizzard, Inc.*, 126 N.H. 271, 276 (1985). "When overriding considerations so indicate, the award of fees lies within the power of the court, and is an appropriate tool in the court's arsenal to do justice and vindicate rights." *Silva v. Botsch*, 121 N.H. 1041, 1043-44 (1981) (brackets omitted). We hold that the Association is entitled to an award of reasonable fees in this case because its action in stopping the unauthorized expenditure of Article 6-a funds "conferred a substantial benefit . . . not only [upon it] . . . , but on the public as well." *Claremont*, 144 N.H. at 595. The motoring public pays Article 6-a fees and fuel taxes and is most likely to suffer from any degradation of highway conditions or failure to build new roads and highway infrastructure due to the diversion of funds for projects not exclusively related to highway purposes.

"The public interest in preserving constitutional rights against governmental infringement is paramount." *Id.* at 598. In successfully challenging the State's diversion of funds from the Article 6-a highway fund to support the development of the Rail Project, the Association has conferred a substantial benefit on all highway users in the State in their capacity as highway users. Accordingly, the case is remanded to the trial court for a determination of reasonable attorney's fees.

*Remanded.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.