Nichols *v.* Lynn.

WILLIAM NICHOLS & others *vs.* CITY OF LYNN & others.[1]

Essex.    January 5, 1977. — February 10, 1977.

Present: QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Municipal Corporations,* Disposition of property.

Neither the failure of a city council to advertise for bids nor any other
   reason required rescission of the sale of certain city-owned real
   estate for $100 on the condition that the buyer demolish an existing
   structure on the land and that use of the land be restricted to a
   single family dwelling. [878-880]

BILL IN EQUITY filed in the Superior Court on August 22,
1973.

The suit was heard by *Mitchell, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*John P. McGloin* for the plaintiffs.

KAPLAN, J.    This was a bill in equity brought by
William Nichols, Robert E. Beaupre, and Elias Nickolop-
oulos, "citizens and taxpayers" of the city of Lynn, against
that city, the mayor and the eleven members of the city
council, and Frederick Goodman, praying a declaration
that a sale of property by authority of the city council to
Goodman was invalid. After trial, a judge of the Superior
Court entered judgment, in the opposite sense, declaring
that the sale was in accordance with law.

The facts found by the trial judge, or conceded, were
these. Through its committee on public property, the coun-
cil advertised for bids on the sale of city-owned land and
building known as the "old Broadway fire station." Thir-
teen bids were received. The highest, by one Henry Loomis,

[1] The other plaintiffs and defendants are mentioned in the text.

was in the amount of $7,047.20. The plaintiffs Beaupre and Nickolopoulos each put in a bid of $3,100. When the bids were opened, the city councillor for the ward in which the property was located informed the council that the building, a two and one-half-story wooden structure, was in disrepair and constituted a fire hazard; he suggested that the sale be on the condition that the purchaser undertake to demolish the building, and on the further condition that the land be restricted to the erection of only a single family dwelling. The council voted to approve the sale on those conditions. There had been no such conditions in the advertisement for bids. Loomis failed to complete the purchase. Accordingly the city council rescinded its vote.

Thereupon the property was put back on the city's list of saleable properties. Goodman, learning of this, and of the conditions which the council had imposed, submitted a written bid of $100 to the city's building superintendent. On July 10, 1973, the council opened Goodman's bid and voted unanimously to accept it on conditions corresponding to those previously set, that he demolish the building and clear out the debris by a stated date, September 1, 1973, and that the land be restricted to a single family dwelling. Against the purchase price of $100, taxes for 1973, and any municipal liens or assessments, Goodman received his deed from the city of Lynn signed by the mayor on July 20, 1973, and recorded it. He proceeded within the specified time to demolish the building and remove the debris at a cost to him of $4,858.

The plaintiffs did not contend that the sale to Goodman in the circumstances was at the time in violation of any State statute or local charter or local enactment requiring advertisement for bids or the like. Cf. *Lawrence* v. *Stratton,* 312 Mass. 517 (1942). Rather they pitched their claim of invalidity on the grounds that it had been customary for sales of city-owned property to be carried out with a procedure of advertisement for bids and that the price paid by Goodman was grievously inadequate. In this connection they attempted to sound the general theme that city officials are "fiduciaries" in relation to their constituents, and

thus to bring to bear by analogy the standards developed in the law of private trusts.

While indicating that it would have been wiser for the city council to proceed by advertisement, the trial judge found no basis for upsetting the sale. We think his conclusion was correct. That there had been a practice of advertisement did not fix a duty on the city council to continue it, and, for the rest, the plaintiffs failed to develop any ground that might justify rescission. They did not establish fraud, collusion, or like irregularity in the conduct of the city officials. They secured no finding that the consideration given by Goodman was inadequate; nor does comparison of that consideration with the bids received on the earlier uncompleted transaction necessarily show such inadequacy. If an analogy to the law of trusts were to be indulged, it could hardly be said that there was apparent inadequacy so great that notice to Goodman of some wrongdoing might fairly be inferred and impair his position as a bona fide purchaser. 4 A. Scott, Trusts § 298.4 (3d ed. 1967). A case cited by the plaintiffs, *Heilig Bros.* v. *Kohler,* 366 Pa. 72 (1950), is not in point; it presented an egregious set of facts suggesting collusion to favor the purchaser against a rival who was known to be ready to buy at a higher price. Cf. *Highway Express Lines, Inc.* v. *Winter,* 414 Pa. 340 (1964). See generally Annot., 17 A.L.R.2d 475 (1951).

In the view we take of the merits, it is unnecessary to consider whether the plaintiffs had standing to maintain the suit. Cf. *R.S. Noonan, Inc.* v. *York School Dist.,* 400 Pa. 391 (1960). With respect to their alleged status as "citizens and taxpayers," compare the requirements of G. L. c. 40, § 53.

*Judgment affirmed.*