Belknap
No. 83-474

IRWIN MARINE, INC.

v.

BLIZZARD, INC. AND THE CITY OF LACONIA

March 20, 1985

272

*Nighswander, Martin, Kidder & Mitchell P.A.*, of Laconia (*David L. Harrigan* on the brief and orally), for the plaintiff.

*Wescott, Millham & Dyer*, of Laconia (*Peter V. Millham* on the brief and orally), for the defendant Blizzard, Inc.

*Decker, Fitzgerald & Sessler*, of Laconia (*James N. Sessler* on the brief and orally), for the defendant City of Laconia.

KING, C.J. This is an appeal from a superior court order setting aside a conveyance of municipal property by the defendant City of Laconia to the defendant Blizzard, Inc. We affirm the superior court order and remand to the superior court for an assessment of attorney's fees.

Irwin Marine, Inc., the plaintiff, is a boat dealership and marina located in Laconia. It abuts city-owned property that formerly had been a railroad station. In 1983, the Laconia city manager invited bids on the property by placing an advertisement in a local newspaper of general circulation. The city manager also gave personal notice and sent copies of the invitation to Irwin Marine and another party, both of whom had previously expressed interest in acquiring the property.

Irwin Marine submitted the only bid, in the amount of $7,000. It proposed to raze the building on the site and maintain the property as a lawn. The city council rejected the proposal and opened a second round of bids on the property through an advertisement in a local newspaper. Irwin Marine received no personal notice that its bid had been rejected or that the city had requested new bids.

Four bids were received in the second bidding procedure. Blizzard, Inc., one of the bidders, offered to buy the property for $25,000 and use it as a marina salesroom and warehouse. The city council accepted Blizzard's offer. Blizzard then received approval of its site plan from the planning board. City site plan regulations, as they existed at the time, did not provide for notice of site plan hearings to abutters, as required under RSA 36:23 (Supp. 1983). Consequently, no notice of the hearing was provided to Irwin Marine or other abutters. The city thereafter conveyed the property to Blizzard by deed, reserving an easement over a portion of the property for highway and sewer purposes.

Irwin Marine filed a petition in superior court to set aside the transfer of the property. Following a hearing before a Master (*Charles T. Gallagher*, Esq.), the Superior Court (*Dunfey*, C.J.) approved the master's recommendation to void the sale. The master ruled that Irwin Marine had no right to have its bid accepted, because the city had previously reserved the right to reject any bids. Relying on *Eddy Plaza Associates v. City of Concord*, 122 N.H. 416, 445 A.2d 1106 (1982), the master further ruled that no site plan approval was required because the Laconia site plan regulations had not been revised to conform with RSA 36:23 (Supp. 1983), so that the Laconia Planning Board lacked authority to approve the site plan. The master, rejecting the plaintiff's claim that the sale failed to meet zoning requirements for subdivisions, ruled that, even if the retention by the city of a portion of the property or an easement constituted a subdivision, a city is exempt from zoning ordinances in the performance of its governmental functions. *McGrath v. City of Manchester*, 113 N.H. 355, 307 A.2d 830 (1973).

The master nevertheless recommended voiding the deed to Blizzard and setting aside the sale on the ground that the bidding

procedures used in the sale did not treat Irwin Marine fairly. The master noted that the city had failed to notify Irwin Marine that its bid had been rejected and that new bids were being solicited. Citing *Seaward Construction Company, Inc. v. City of Rochester*, 118 N.H. 128, 383 A.2d 707 (1978), the master concluded that the city had not met elementary standards of good faith and fair dealing in contractual relations. The defendants appealed from the superior court order approving the master's report.

The central issue raised by the defendants is whether the master erred as a matter of law in holding the City of Laconia to a standard of fairness in its bidding procedure, rather than applying a standard of review that would defer to the discretion of city officials unless the sale was conducted in an arbitrary, capricious or fraudulent manner.

 A municipality has the right to sell property that is not needed for public use. *Velishka v. Nashua*, 99 N.H. 161, 168, 106 A.2d 571, 575 (1954) (citing *Meredith v. Fullerton*, 83 N.H. 124, 139 A. 359 (1927)). To encourage bidding on municipal property offered for sale and to inform local citizens, statutes and charters often establish procedures for notice of a sale by advertisement, or for competitive bidding or sale by public auction. 10 E. MCQUILLIN, MUNICIPAL CORPORATIONS § 28.45, at 144–45 (3d ed. rev. 1981). In the context of municipal contracts, competitive bidding statutes are intended for the benefit of property holders and taxpayers, not that of the bidders, and for the purpose of guarding against "favoritism, improvidence, extravagance, fraud and corruption . . . ." *Id.* § 29.29, at 302. The statutes are therefore applied "fairly and reasonably with sole reference to the public interest." *Id.* Laconia, however, exempts the sale of city property from its competitive bidding ordinance, CITY OF LACONIA, ADMINISTRATIVE CODE, art. 4.6(i)6, and does not specify any procedure for the sale of its property.

 In the absence of a competitive bidding ordinance, "municipalities, like private parties, generally are free to contract without the requirement of advertisement and competitive bidding." *Gerard Construction Co. v. City of Manchester*, 120 N.H. 391, 395, 415 A.2d 1137, 1139 (1980); *see Nichols v. Lynn*, 371 Mass. 878, 880, 359 N.E.2d 1292, 1293 (1977) (custom does not establish duty to advertise for bids on city-owned property). The decision by a city council to accept a bid on the sale of municipal real estate has been said to be discretionary, so that the sale cannot be voided unless the plaintiff shows that the decision was "arbitrary, capricious, unjust, or illegal." *Brady v. Carlson*, 9 Ohio App. 3d 24, 26, 457 N.E.2d 1182, 1185 (1983). Similarly, the awarding of public contracts in the absence of

a statute or ordinance governing bidding procedure is left to the reasonable judgment of municipal authorities. *Butler v. Inhabitants of Town of Tremont*, 412 A.2d 385, 387 (Me. 1980) (citing *Archambault v. Mayor of Lowell*, 278 Mass. 327, 332, 180 N.E. 157, 159 (1932)). Nevertheless, as a part of their obligation to protect the public interest during the sale of municipal property, "municipal authorities should administer discretionary powers in a manner which avoids weakening public confidence in government." *Northeast Electronics Corporation v. Royal Associates*, 184 Conn. 589, 593, 440 A.2d 239, 241 (1981).

In *Perry v. West*, 110 N.H. 351, 355, 266 A.2d 849, 852–53 (1970), we held that the public is entitled to rely upon the terms of an auction sale as set forth in the advertisement and ordinances related to the sale. "Certainty in bidding procedures by which all bidders are on an equal basis should not be discouraged in the disposition and sale of municipal property." *Id.*, 266 A.2d at 853. We conclude that once a municipality has chosen a public bidding procedure in the sale of its realty, the public interest and public confidence in government require the municipality to treat all bidders fairly and equally. *See Stone v. Salt Lake City*, 11 Utah 2d 196, 204, 356 P.2d 631, 636 (1960) (requiring that sales of public property, absent a statute, be fairly and openly conducted and that essentials of procedural regularity, including notice and a reasonable opportunity for interested persons to be heard, must be afforded).

As a general rule, absent a competitive bidding statute, cities and towns are free to exercise discretion in determining what property to sell and how to sell it. *See Brady v. Carlson, supra* at 26, 457 N.E.2d at 1185 (applying discretionary standard). The judiciary's role should not be to write competitive bidding procedure into municipal sales on a case-by-case basis. However, we hold that a municipality's discretion in matters concerning the sale of public property, even absent a statute, must be bounded by notions of fairness in order that the public interest and public confidence in governmental actions be upheld. *See Stone v. Salt Lake City, supra* at 204, 356 P.2d at 636 (a sale may be invalidated for "secrecy, subterfuge, fraud or other impropriety"); *Wiener v. City of Reno*, 88 Nev. 127, 132–33, 494 P.2d 277, 281–82 (1972) (Mowbray, J., dissenting); *see also* Newman, *Rethinking Fairness: Perspectives on the Litigation Process*, 40 REC. A. B. CITY N.Y. 12 (1985). Among potentially invalidating improprieties are unfair advantage afforded to one bidder to the detriment of another and inadequate notice of subsequent developments to parties relying in good faith on a municipality's prior notice.

In the instant case, although it was not required to do so by statute or ordinance, the City of Laconia chose a public bidding procedure as the method to sell the property in question. The procedure chosen by the city shares the public interest rationale underlying competitive bidding statutes. The master ruled that the plaintiff did not receive fair notice. The plaintiff received notice, made an offer and anticipated a response from the city. It was therefore put at a disadvantage in relation to other potential bidders when the city sent out a second invitation for bids, because it expected the first bidding procedure to conclude with notice to bidders as to whether any bid had been accepted, and therefore was justifiably not alerted to the new advertisement for bids. Under the procedure that it chose, the city should have given the plaintiff fair notice as part of a duty to put all bidders on an equal footing.

A public bidding procedure that places a bidder at a disadvantage violates the public interest in according prospective bidders an equal opportunity to bid and weakens public confidence in government. We hold that the master's ruling conformed to the proper legal standard, and we conclude that his findings were supported by credible evidence. Accordingly, the master did not err in voiding the deed to Blizzard and setting aside the sale of the property.

We further find it appropriate under these circumstances to require the City of Laconia to pay the attorney's fees of Irwin Marine and Blizzard.

Although under the general American rule each party pays for his own attorney's fees, the legislature and judiciary have created a number of flexibly applied exceptions. *Silva v. Botsch*, 121 N.H. 1041, 1043, 437 A.2d 313, 314 (1981). In *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393–94 (1970), the United States Supreme Court awarded attorney's fees when a litigant conferred a "substantial benefit" on an ascertainable class of stockholders in a stockholder derivative action. Relying on the "substantial benefit" rationale of *Mills*, the *Silva* court awarded attorney's fees to a town official who successfully challenged his removal from office because, as a public trustee elected to administer municipal affairs, his litigation not only vindicated his own right to hold office but moreover conferred a substantial benefit on the town that he served. *Id.* at 1043, 437 A.2d at 314–15; *see also Foster v. Town of Hudson*, 122 N.H. 150, 441 A.2d 1183 (1982) (awarding attorney's fees to appointed police chief in position of public trust in action resisting removal from office).

In the instant case, Irwin Marine vindicated its own interest in setting aside a sale of municipal property that was based on

an unfair public bidding procedure. But more importantly, it conferred a substantial benefit on bidders as well as Laconia's citizens and taxpayers by successfully seeking a requirement of fairness in the city's public bidding procedures. Irwin Marine's counsel fees should therefore be shifted to the City of Laconia.

▉▉ The City of Laconia should also be required to pay for Blizzard's counsel fees. A party that justifiably relies on governmental procedures ought not to be penalized in a subsequent court action in which the procedures are successfully challenged, by having to pay its own attorney's fees. That cost is more equitably borne by the governmental entity whose procedures are adjudicated as erroneous. Here, Blizzard complied with the city's bidding procedures and had its bid accepted. The city, whose bidding procedures in this instance have been invalidated, therefore, ought to pay Blizzard's counsel fees.

We remand to the superior court with instructions to determine and award reasonable attorney's fees to Irwin Marine and Blizzard.

*Affirmed; remanded for further
proceedings.*

SOUTER, J., dissented; the others concurred.

SOUTER, J., dissenting: It is hard to dissent from an opinion that seeks to apply notions of fairness to governmental business, but I must respectfully do so in this case.

It is accepted law that courts will enforce those obligations of good faith and fair dealing that are implicit in any contract. *Seaward Constr. Co. v. City of Rochester,* 118 N.H. 128, 129, 383 A.2d 707, 708 (1978). This rule is not, however, authority for granting the relief that Irwin seeks, since Irwin claims the benefit of no contract. Nor, as both the majority and I view this case, is there any sustainable claim that the city has impermissibly varied the terms of its invitation to bid. *See Perry v. West,* 110 N.H. 351, 266 A.2d 849 (1970). Indeed, there is no indication that in the city's dealings with either Irwin or Blizzard any party violated any city ordinance, State statute or constitutional standard.

The question is simply whether the city's unfairness in failing to notify Irwin of its rejected bid should justify setting aside the city's acceptance of Blizzard's later bid and the ensuing conveyance of property. I would answer no.

I espouse a full measure of judicial discretion in attempting to make judicial procedure as fair as it can be. *See, e.g.,* Newman, *Rethinking Fairness: Perspectives on the Litigation Process,* 40 REC. A. B. CITY N.Y. 12 (1985). But when, as here, we are asked in the

name of simple fairness to overturn the actions of other branches of government, other considerations counsel restraint.

This is not the case to set comprehensive principles for measuring the deference that the judiciary owes in reviewing governmental action that violates neither constitution nor statute. On any principle, however, I submit that courts should not overturn governmental action unless by doing so they can produce a fairer result than the one they condemn. I do not believe that the result in this case can pass that test.

I will assume for the sake of this opinion that it was unfair of the city to fail to notify Irwin of the rejected bid. But to recompense Irwin for this unfairness, I am afraid that the court is imposing unfairness at least as great on Blizzard. Blizzard acted lawfully with a city that was acting lawfully. It made a contract that, on this record, we must assume was untainted by any undue private advantage or favoritism. But now Blizzard is to be deprived of the benefit of its contract because of the city's unfairness to Irwin. The price of Irwin's relief is injury to Blizzard. The cure seems to me as bad as the disease.

The majority indicate that a broader public benefit may accrue from this holding, in the form of a better bidding procedure. I can only say that the public has the power to obtain that benefit by statute or city ordinance, without depriving Blizzard of the benefit of its contract.

I would reverse the judgment.