NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2018-0172


DONALD TOY & a.

v.

CITY OF ROCHESTER & a.

Argued: March 28, 2019
Opinion Issued: July 30, 2019

Donald F. Whittum Law Office PLLC, of Rochester (Donald F. Whittum on the memorandum of law), and Carl W. Potvin, of Rochester, orally, for the plaintiffs.

Andrea K. Mitrushi, deputy city attorney, of Rochester, by brief and orally, for the defendants.

BASSETT, J. The defendants, the City of Rochester (City) and Michael G. and Stacey A. Philbrook, appeal orders of the Superior Court (Howard, J.): (1) requiring the City to reacquire title to a parcel of land it previously conveyed to the Philbrooks and transfer title to the plaintiffs, Donald and Bonnie Toy; and (2) awarding attorney's fees to the Toys. We affirm in part, reverse in part, vacate in part, and remand.

The material facts are largely undisputed. The following facts were found by the trial court or are supported by the record. In May 2015, the City took title to a 1.8-acre parcel of land located in Rochester (Lot 54), which contains a house and garage in poor condition. The Philbrooks own a lot that shares a boundary with Lot 54. The Toys own a manufactured housing park known as "Addison Estates" and an additional, smaller lot, which are located nearby. On August 15, 2015, the Toys purchased an additional lot, which shares boundaries with Addison Estates and Lot 54. Lot 54 is located in a zoning district in which the development or expansion of manufactured housing parks is prohibited.

In August 2015, the Rochester City Council voted to sell Lot 54 through an advertised sealed bid process. Shortly thereafter, the City posted a bid package, which included a Notice of Sale and Conditions of Sale. The Notice of Sale included information on Lot 54 and a bidding deadline of August 27, 2015, and set forth the bidding procedure. The Notice of Sale required "[e]ach bidder . . . to note on the Bid Form their intended use of the property, i.e. owner occupied single family residence, absorption into an adjacent lot, etc." It also stated that "[t]he City reserves the right to reject any and all bids and waive any minor or nonmaterial informalities, if deemed to be in the best interests of the City."

The Conditions of Sale set a minimum bid of $30,000, and expanded upon information set forth in the Notice of Sale. It provided that "[a]butters . . . who bid on the parcel will have the right of first refusal at the highest bid price." Additionally, the Conditions of Sale stated that the property was being sold in "'As Is' condition" and "without warranty as to . . . the ability to gain any desired regulatory approval from the City (i.e. zoning compliance)," and that the City would convey title to the successful bidder by quitclaim deed.

The City received five bids for Lot 54. The Toys submitted the highest bid of $45,500, and represented that they intended to "annex the property" to their adjacent property. A non-abutter who intended to "rehab" the existing single house and garage submitted the next highest bid of $36,200. Another abutter, who intended to absorb Lot 54 into his adjacent property, submitted the third highest bid of $35,800. The fourth highest bid in the amount of $31,500 was submitted by a non-abutter who intended to utilize Lot 54 for a single family residence. The Philbrooks submitted the lowest bid of $31,000, stating that they intended to "[a]dd this abutting land to [their] land."

On September 8, 2015, the city finance committee held a non-public session to discuss the bids. The City's mayor directed the deputy city manager to solicit additional details about the intended use of the property from the abutters who submitted bids.

2

The deputy city manager contacted the Toys' attorney and Michael Philbrook. The Toys' attorney informed him that "Mr. Toy had not decided exactly what he wanted to do with the property," and stated that Mr. Toy might place a single family home on the lot, use it as an entrance to make Addison Estates more attractive, or combine it with the adjacent lot he recently purchased "in order to expand Addison Estates." Mr. Philbrook informed the deputy city manager that he wanted to build a single family home on the property, adding that he could not afford to match the highest bid, but could probably match the second-highest bid of $36,200.

The deputy city manager presented this information at a non-public city council meeting on September 15, 2015. During this session, the city council reached a "'consensus'" that the City would sell Lot 54 to the Toys, provided that they agreed to a restrictive covenant in the deed prohibiting the owner of Lot 54 from ever using the property for manufactured housing park development or to expand Addison Estates. The city council also agreed that, if the Toys did not accept the restrictive covenant, it would sell the lot to the Philbrooks.

The next day, the city attorney told the Toys' attorney that the City "would sell [the Toys] the property as long as [they were] agreeable to a deed restriction" which would prevent the development or expansion of a manufactured home park on the property. He also informed the Toys' attorney that "the zoning ordinance had changed and that manufactured home parks are no longer a permitted use." The city attorney inquired as to whether the Toys would accept the property with the restrictive covenant, and the Toys' attorney declined. In light of this response, the city council directed the city attorney to sell Lot 54 to the Philbrooks for $36,200. On October 13, the City conveyed the property to the Philbrooks by a warranty deed that did not contain any restrictive covenants.

After Donald Toy learned that the City sold Lot 54 to another bidder, the Toys' attorney demanded that the City sell the property to the Toys because they were the highest bidder. The city attorney responded that, after the Toys' bid was rejected by the City, it had sold Lot 54 to another bidder.

The Toys filed a complaint against the City and the Philbrooks, asserting claims for breach of contract and declaratory judgment. Their complaint sought damages, a declaration that the Toys were "lawfully entitled to the right of first refusal" on Lot 54, an order concluding that the City "breached the Conditions of Sale by transferring" Lot 54 to the Philbrooks and requiring the Philbrooks to convey Lot 54 to the Toys, and attorney's fees. The defendants filed a motion to dismiss the Toys' complaint.

The trial court granted the motion in part, dismissing the Toys' breach of contract claim. The parties then filed cross-motions for summary judgment.

3

The trial court granted summary judgment to the defendants on the Toys' declaratory judgment claim to the extent that the claim was based upon a right of first refusal. The trial court otherwise denied the cross-motions for summary judgment.

Following a two-day trial, the trial court granted the Toys' request for declaratory judgment and injunctive relief. The trial court concluded that "the City's failure to award the property to the Toys as the highest bidding abutter, and imposing a restrictive covenant . . . as a condition of sale to the Toys, violated . . . and improperly and materially amended the Conditions of Sale with regard to the Toys." The trial court ordered the City to reacquire title to Lot 54 from the Philbrooks and immediately transfer the parcel by quitclaim deed to the Toys in exchange for the Toys' payment of their bid amount to the City. The trial court also granted the Toys' request for attorney's fees.

The defendants moved for reconsideration. The trial court denied the motion, and ordered the City to pay the Toys' attorney's fees, expenses, and costs in the amount of $32,016.31. This appeal followed.

On appeal, the defendants argue that the trial court: (1) erred in ordering relief to the Toys based upon a "cause of action not alleged in the complaint"; (2) erred in granting the Toys' requested relief because the City was within its right to reject their bid under the terms of the sale; (3) granted two forms of relief to the Toys "without legal authority" by ordering the City to transfer title to Lot 54 to the Toys and pay the Toys' attorneys' fees; and (4) unsustainably exercised its discretion in granting the Toys' request for attorney's fees.

The defendants first argue that the trial court erred when it ordered relief based upon legal theories and facts that were not set forth in the Toys' complaint — specifically, the Toys' claim and supporting evidence that the City's imposition of the restrictive covenant violated the terms of the Conditions of Sale. We disagree.

It is well settled that a defendant is entitled to be informed of the theory on which the plaintiff is proceeding and the redress that the plaintiff claims as a result of the defendant's actions. Porter v. City of Manchester, 151 N.H. 30, 43 (2004). However, "New Hampshire is a notice pleading jurisdiction, and, as such, we take a liberal approach to the technical requirements of pleadings." City of Keene v. Cleaveland, 167 N.H. 731, 743 (2015) (quotation and brackets omitted). A complaint "need not do more than state the general character of the action and put both court and counsel on notice of the nature of the controversy." Pike Industries v. Hiltz Construction, 143 N.H. 1, 4 (1998).

Although the Toys' trial theory relating to the restrictive covenant was not expressly articulated in their complaint, we fail to see how the defendants lacked notice that the Toys would rely upon this argument at trial. This is

4

especially so because the defendants first raised the issue of the restrictive covenant in their summary judgment motion. In response, the Toys advanced the very argument that they later asserted at trial: that the City violated the Conditions of Sale and treated them unfairly by requiring them, but not the Philbrooks, to accept a restrictive covenant. The trial court's denial of the defendants' motion for summary judgment was based, in part, on its conclusion that the restrictive covenant was one ground upon which the Toys' claim could proceed. Thus, the defendants were squarely on notice that the Toys would employ this theory to prove their entitlement to the requested equitable relief.

Moreover, despite this notice, the defendants failed to raise any objection to the Toys' ability to rely upon the restrictive covenant until the close of the Toys' case at trial. Based upon the record before us, we see no unfairness in the trial court's consideration of the Toys' arguments and evidence submitted at trial. Cf. Morancy v. Morancy, 134 N.H. 493, 497-98 (1991) (concluding that it would be "grossly unfair" to allow the trial court's decision on the merits to stand where the decision was based, in part, on a cause of action that the trial court had dismissed prior to trial and that was not pled in the plaintiffs' complaint).

Next, we address the defendants' argument that the trial court erred in granting the Toys' request for declaratory judgment and injunctive relief. When a trial court renders a decision after a trial on the merits, we uphold its factual findings and rulings unless they lack evidentiary support or are legally erroneous. Vention Med. Advanced Components v. Pappas, 171 N.H. 13, 28 (2018). We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Marist Bros. of N.H. v. Town of Effingham, 171 N.H. 305, 309 (2018). Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. Id. Nevertheless, we review the trial court's application of the law to the facts de novo. Id.

The defendants argue that the trial court erred when it concluded that the Toys had a right to acquire Lot 54 because: (1) neither the Notice of Sale nor the Conditions of Sale required the City to sell to the highest bidding abutter; and (2) the City was within its rights, pursuant to the Notice of Sale, to reject the Toys' bid because the City decided it was not in its best interest to convey Lot 54 to the Toys after they refused to accept the restrictive covenant. The Toys counter that the Conditions of Sale required the City to sell Lot 54 to the highest bidding abutter. They also assert that the City did not treat them fairly and equally when it failed to notify them that they were the highest bidding abutters, required them to accept a restrictive covenant as an additional condition of sale, "selectively solicited" an increased bid from the

5

Philbrooks, and sold the property to the Philbrooks without requiring them to accept a similar restrictive covenant.  The Toys, in essence, argue that our holding in Irwin Marine, Inc. v. Blizzard, Inc., 126 N.H. 271 (1985), upon which the trial court relied in rendering its decision, requires that we affirm.  See Irwin Marine, 126 N.H. at 275.  We disagree.

In Irwin Marine, we stated that, "absent a competitive bidding statute, cities and towns are free to exercise discretion in determining what property to sell and how to sell it."  Id. at 274.  Indeed, "[t]he decision by a city council to accept a bid on the sale of municipal real estate has been said to be discretionary, so that the sale cannot be avoided unless the plaintiff shows that the decision was arbitrary, capricious, unjust, or illegal."  Id. (quotation omitted).  We observed that "a municipality's discretion in matters concerning the sale of public property, even absent a statute, must be bounded by notions of fairness in order that the public interest and public confidence in governmental actions be upheld."  Id. at 275.  When a municipality is not bound by competitive bidding statutes or ordinances, yet "has chosen a public bidding procedure in the sale of its realty, the public interest and public confidence in government require the municipality to treat all bidders fairly and equally."  Id.

The parties do not urge us to overrule Irwin Marine, and no party argues that Irwin Marine was not properly decided.  Accordingly, we apply Irwin Marine to the facts of this case, keeping in mind the important principle of separation of powers and "the deference that the judiciary owes in reviewing governmental action that violates neither constitution nor statute."  Id. at 278 (Souter, J., dissenting).  At the outset, we observe that the ordinance referenced by the trial court that relates to municipal real estate sales provides that the City has the authority to establish and conduct a sealed bidding procedure.  Notably, the Toys do not assert that the City violated any provision of the competitive bidding ordinance.

We turn to the first challenged trial court finding — that the City violated the Conditions of Sale when it failed to sell the property to the highest bidder.  Although, as the trial court noted, the Conditions of Sale provided that abutters would have a right of first refusal at the highest bid price, the right was not without qualification: in the Notice of Sale the City reserved the "right to reject any and all bids . . . if deemed to be in the best interests of the City."  Thus, the City explicitly retained the discretion to reject any bid — including the highest bid from an abutter — if it concluded that doing so would be in the best interests of the City.

The trial court recognized the validity of the "best interests" provision set forth in the Notice of Sale, and the court's ruling in that regard is not challenged on appeal.  However, the trial court went on to find that "the City presented no evidence . . . that it rejected the Toys' bid because it in fact

6

deemed the Toys' bid not to be in the best interests of the City." The trial court also observed that there was no evidence in the record as to "what the City deemed to be in its best interests." Although we agree that city officials never expressly declared that the City deemed it to be in its "best interests" to reject the Toys' bid, nothing in the Notice of Sale or Conditions of Sale required the City to make such a formal or explicit statement, or to explain to the abutters or to the public precisely why it deemed rejection of a bid to be in the City's best interests. In fact, the Notice of Sale did not require the City to follow any particular procedure when deciding whether to reject a bid based upon the best interests of the City.

In the Notice of Sale, the City sets forth the requirement that all bidders provide information regarding their intended use of the property. The next provision in the Notice of Sale explicitly states that the City reserves the right to reject any bid if deemed to be in the best interests of the City. Viewing these provisions together, it is evident that the City wanted to consider the bidders' intended use of the property as part of its best interests analysis. We hold that the mere absence of an express declaration of "best interests" is insufficient to demonstrate that the City's exercise of discretion was "arbitrary, capricious, unjust, or illegal" or that the City treated the Toys unfairly. Irwin Marine, 126 N.H. at 275 (quotation omitted). Holding the City to a more demanding standard would impose a requirement that neither this court nor the legislature has previously articulated. Accordingly, we look to the record to determine whether the evidence establishes that the City actually rejected the Toys' bid because it deemed the rejection to be in the best interests of the City. Here, we conclude that it does.

According to the testimony of the mayor, who was the city council's finance committee chair at the time, the city council considered several factors in addition to the highest bid price, including "protecting the integrity of the neighborhood" and ensuring that the "population density was okay and that the abutters wouldn't be . . . unnecessarily burdened." These factors relate directly to the intended use of the property. The mayor further testified that the city council was concerned with one of the possible uses of the property by the Toys — the expansion of Addison Estates, the manufactured housing park already owned by the Toys — because it "wanted to make sure . . . that the development of [Lot 54] was in the best interest of the City, which was to make sure it fit into the neighborhood." Specifically, he testified that "it all came back to the issue of . . . mobile home parks," and noted the city council's concern as to whether the Toys were aware that the current zoning ordinance precluded use of Lot 54 as a manufactured housing park. He further testified that the city council was not "going to permit any such use in the future." The mayor recounted that, upon learning that the Toys would not accept the restrictive covenant, the city council decided not to sell the property to the Toys.

The mayor's unrebutted testimony demonstrates that the City based its decision to reject the Toys' bid on its assessment of the best interests of the City — specifically, that the use of the property to expand the Toys' manufactured housing park would be contrary to the City's best interests. In rejecting the Toys' bid, the City complied with the terms of the Notice of Sale and Conditions of Sale. Accordingly, in the absence of any allegation by the Toys of invidious discrimination by the City or other conduct specifically prohibited by ordinance, statute, or the constitution, we conclude that the trial court erred when it determined that the City violated the Conditions of Sale when it declined to sell Lot 54 to the highest bidder.

The City's refusal to sell Lot 54 to the highest bidder, was not, however, the only basis for the trial court's conclusion that the City ran afoul of Irwin Marine. The trial court also concluded that the City did not treat the Toys in a fair and equal fashion when it (1) required that the Toys accept a restrictive covenant as an additional condition of sale, and (2) failed to require that other bidders accept the same restrictive covenant. The trial court determined that the City "improperly and materially amended" the terms of the sale because the City did not "reserve[] any type of right or option to convey the property with a restrictive covenant limiting the acceptable intended use, or future use and marketability of the property." Although, ideally, the City should have included the restrictive covenant in the Notice of Sale or the Conditions of Sale, we disagree with the trial court that the City could not subsequently revise the terms of sale to include the restrictive covenant. See Irwin Marine, 126 N.H. at 275-76.

Irwin Marine stands for the proposition that municipalities must treat all bidders fairly and equally under the terms of sale adopted by the municipality and any municipal ordinance or statute. See Irwin Marine, 126 N.H. at 275. At the same time, in Irwin Marine, we reaffirmed the important principle that municipalities "are free to exercise discretion in determining what property to sell and how to sell it." Id. In Irwin Marine, we concluded that the City of Laconia treated the plaintiff unfairly when it failed to notify the plaintiff, the only bidder in the first round of bidding, that it had rejected its bid and had opened a second round of bidding. Id. at 273, 276. It was not Laconia's rejection of the highest bid or its decision to open a second round of bidding that constituted the unfair conduct; rather, the unfairness resulted from the lack of notice to the plaintiff of the rejection of its bid, which placed the plaintiff "at a disadvantage in relation to other potential bidders" when the City conducted another round of bidding. Id. at 276 ("A public bidding procedure that places a bidder at a disadvantage violates the public interest in according prospective bidders an equal opportunity to bid and weakens public confidence in government."). Accordingly, nothing in Irwin Marine prohibits a municipality from amending the terms of sale, provided that it does so in a fair and equal manner.

Nor does our observation in <u>Perry v. West</u>, 110 N.H. 351 (1970), that "[b]oth the [municipality] and the public were entitled to rely upon the terms of the auction sale," prohibit a municipality from revising the conditions of sale. <u>Perry</u>, 110 N.H. at 355. There, we encouraged "[c]ertainty in bidding procedures by which all bidders are on an equal basis . . . in the disposition and sale of municipal property." <u>Id</u>. at 355. This admonition, however, does not prevent a municipality from revising the terms of sale as long as it implements any changes in a manner that treats all bidders fairly and equally. <u>See</u> <u>id</u>.

Here, in light of the bid requirement that bidders disclose their intended use of Lot 54, and the City's explicit reservation of the right to refuse any bid if deemed in the best interests of the City, and given the City's desire to prevent the use of Lot 54 as a manufactured housing park — whether by expansion of Addison Estates or otherwise — it was not unfair for the City to impose the restrictive covenant as a condition of sale. Although the trial court implies that this additional requirement was unfair because the deed restriction would reduce the value and marketability of the property, we see no unfairness in imposing this requirement since the bidders were under no obligation to consummate the purchase at the original bid price, or to agree to accept the property subject to the restrictive covenant.

The trial court also found that the City's request that the Toys accept a restrictive covenant was inconsistent with the City's representation in the Conditions of Sale that it would make no warranty as to "the ability to gain any desired regulatory approval from the City (i.e. zoning compliance)." We disagree with the trial court's interpretation of the language of the Conditions of Sale. The provision in the Conditions of Sale merely informed bidders that the property would be sold without any promises as to municipal approval for future use. The provision did not prohibit the City from requiring the successful bidder to accept a deed restriction that would prevent the bidder from seeking regulatory approval for any specific use — particularly if the City deemed that use to be contrary to its best interests. Thus, we conclude that, especially given the City's concerns about future use of the property, the City did not violate the terms of sale or treat the Toys unfairly when it required the Toys to accept a restrictive covenant as a condition of sale.

Up to this point, we see no unfairness to the Toys in the City's actions. However, we agree with the trial court that, in contravention of <u>Irwin Marine</u>, the City failed to treat the Toys "fairly and equally" when it did not require the Philbrooks to accept the same restrictive covenant demanded of the Toys. <u>Irwin Marine</u>, 126 N.H. at 275. Once the City conditioned the sale to the Toys on their acceptance of the restrictive covenant, fairness dictated that the City require all bidders to accept the same covenant in order to "put all bidders on equal footing." <u>Id</u>. at 276. It is immaterial that the Philbrooks represented to the City that they did not intend to develop a manufactured housing park on

9

the property; the City's decision to require the Toys — but not the Philbrooks — to accept the restrictive covenant was unfair because the Philbrooks were able to acquire Lot 54 free of a development restriction that almost certainly would have had a negative impact on the value of the property.

We conclude that the City's decision to require the Toys to accept the restrictive covenant as an additional condition of sale, but not to impose the same condition on the sale to the Philbrooks, was "outside the bounds of fairness." Id. at 275. Accordingly, we affirm the trial court's conclusion that the City did not treat the Toys "fairly and equally" — but only to the limited extent that the City failed to require that other bidders, including the Philbrooks, accept the restrictive covenant. Id.

We now review the equitable relief ordered by the trial court: that the City reacquire title to Lot 54 from the Philbrooks and transfer the title by quitclaim deed to the Toys. This award of equitable relief was based upon the trial court's conclusion that the City was required to sell the property to the highest bidding abutter, and that it did not have the right to impose a restrictive covenant as an additional condition of sale. Because the trial court erred in both respects, and the errors necessarily informed the court as it fashioned a remedy, we vacate the trial court's grant of equitable relief, and remand to the trial court to craft a suitable remedy. In so doing, we observe that the City would not have run afoul of Irwin Marine had it merely decided to initiate a second round of bidding with the restrictive covenant as a condition of sale, instead of conveying Lot 54 to the Philbrooks without the covenant.

We recognize that five parties — not just the Toys and the Philbrooks — submitted bids for the purchase of Lot 54, and the City's failure to notify all bidders of the revised terms of sale failed to place "all bidders on an equal footing." Id. at 276. Accordingly, on remand, one equitable remedy that the trial court may wish to consider to address the City's failure to provide notice of the revised purchase terms is to order the City to reacquire title to Lot 54 from the Philbrooks, and to refund the Philbrooks' purchase price together with their costs.[1] The City could then decide whether to keep Lot 54 or to sell it, and whether to include a restrictive covenant in the terms of sale. Of course, the City would be required to treat all bidders fairly and equally. Id. at 275.

Finally, the defendants challenge the trial court's award of attorney's fees to the Toys. The fee award, like the equitable relief fashioned by the trial court, was premised in large part upon the trial court's erroneous determination that the City violated Irwin Marine when it failed to convey the property to the highest bidding abutter, and when it required the Toys to accept the restrictive

---

[1] We note that rescinding the sale could "impos[e] unfairness at least as great" on the Philbrooks, who did nothing wrong. Irwin Marine, Inc. v. Blizzard, Inc., 126 N.H. 271, 278 (1985) (Souter, J., dissenting) ("The cure seems to me as bad as the disease.").

covenant as a condition of sale.  Notably, we have rejected the Toys' primary contention on appeal — that, as the abutters submitting the highest bid, they were entitled to purchase the property without a restrictive covenant.  We make no determination as to the other bases for the award of fees.  Accordingly, we vacate the fee award and remand the issue of attorney's fees to the trial court for further proceedings consistent with this opinion.

<u>Affirmed in part; reversed in part; vacated in part; and remanded</u>.

LYNN, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

11