# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0295, <u>Stanley Emanuel v. Town of Bow, New Hampshire & a.</u>, the court on May 13, 2021, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. See Sup. Ct. R. 18(1). The plaintiff, Stanley Emanuel, appeals an order of the Superior Court (Kissinger, J.) granting summary judgment in favor of the defendants, the Town of Bow, New Hampshire, and Ted Severance, with respect to Emanuel's claims that the Town engaged in unfair bidding practices when selling certain real property. We affirm.

The pertinent facts are as follows. The property at issue is a 28.23-acre parcel located in the Town's business development district. Pursuant to RSA 41:14-a, I (2012), the Town's Conservation Committee, Heritage Commission, and Planning Board held meetings to approve the proposed sale. The Conservation Committee recommended that the property be sold subject to the recommendations of the Heritage Commission, which, in turn, recommended that the Town retain ownership over a historic mill site and stream flow on the property. The Planning Board also recommended that the property be sold, "preferably to a bidder who has immediate plans to develop it and get it back on the tax roll."

In March 2019, the Town solicited sealed bids for the property by issuing a notice of offer to sell town parcel, which described the property, the bidding process and requirements, and other conditions of the sale. The notice provided, among other things, that:

- "Bidders must use the Bid Form in this packet";
- "In the case of a tie bid, the Town reserves the right to use the earliest post marked date and time on the sealed bid envelope";
- "The Town retains the right to reject any and all bids and to waive any formality in the bidding process";
- "There is an historic mill site on the land. The Quit Claim Deed will include an easement to the Town for access to the mill site and the right to maintain and preserve the mill site";

- "Bidders may provide information regarding their plans for future development of the Premises. This information may be considered by the Board of [Selectmen] when evaluating the bid proposals"; and
- "Bidders are advised there is a snow mobile trail across the land . . . Bidders are encouraged to commit to reach an agreement with Bow Pioneers for continuation of the trail."

The notice did not include the minutes of the Conservation Committee, Heritage Commission, or Planning Board meetings, nor did it detail their discussions or recommendations.

The Town attached to the notice a summary of the business development district zoning ordinance, which provides:

The purpose of the Business Development District Ordinance is to attract environmentally acceptable commercial, industrial, recreational, and institutional uses to the District; to encourage diversity in the community tax base through appropriate flexibility in land use and land use development; to optimize financial return on public infrastructure investments and expenditures . . . ; to minimize adverse traffic impacts . . . ; and to preserve valuable historical, cultural, and natural features within the District and to minimize adverse environmental impacts to water and air, while reducing light and noise pollution, flooding, clear cutting of vegetation, and the blocking of scenic views.

The Town also attached a required bid form, which asked bidders to submit certain identifying information, the amount of their bid, and to certify, among other things, that the bidder "understand[s] that the Town reserves the right to reject any and all bids and to waive any formality in the bidding process." The bid form also included a section asking bidders to submit information about their plans to develop the property, but noted that this section was "not required."

In April 2019, the Town received five bids for the property. Emanuel's bid offered the highest purchase price, but did not identify any proposed development plans for the property. Severance's bid was lower, but stated that he intended

to develop the premises as quickly as possible into a retail store for building material. Bidder is a sustained and successful businessman in the Town and has a vested interest in the future of the Town. The new store will create new local job opportunities and create a much needed and convenient place for the people of the Bow community to purchase building materials. In addition,

2

the Bidder, if successful, will meet with the Bow Pioneers to discuss terms and conditions for the continuation of [the] existing snowmobile trail.

In late April 2019, at a meeting of the Town Board of Selectmen, the board reviewed the submitted bids to determine "which would provide the most long-term benefit to the Town, including the future use of the land." Emanuel objected to the application of that standard, questioning "whether it was appropriate for the Town to consider future development of the site instead of only the bid offer." The vice chair of the board responded that "it has been the intent of the Business Development Commission to develop that land." Thereafter, the board selected Severance's bid as the winning bid. Emanuel filed a request to reconsider, which, following a hearing in May 2019, was denied. Emanuel then sued the Town and Severance in superior court. The parties filed cross-motions for summary judgment, and, in an order issued in April 2020, the trial court granted summary judgment in favor of the Town and Severance. The trial court denied Emanuel's motion for reconsideration, and this appeal followed.

"In reviewing a trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the non-moving party," and, "if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." Langevin v. Travco Ins. Co., 170 N.H. 660, 663 (2018). "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." Id. "We review the trial court's application of the law to the facts de novo." Id.

On appeal, Emanuel first argues that the trial court erred by granting summary judgment in favor of the Town and Severance because Emanuel's bid "was the highest bid that conformed to the terms of the auction sale," and that, under the "general rule" described in Perry v. West, 110 N.H. 351, 355 (1970), and the cases cited therein, the property must be awarded to the highest bidder. See id. We disagree.

Emanuel's argument is based on the following statement in Perry: "The general rule that a municipality must accept the highest bid only requires acceptance of the highest bid which conforms to the terms of the auction sale consistent with the governing municipal ordinance." Id. (citations omitted). However, Perry involved a tax sale, and the issue in that case was "whether a municipality can be compelled to accept a bid for property sold for taxes accompanied by a bank draft or a cashier's check when the municipal ordinance and the announced terms of the auction sale require[d] the bid to be accompanied by 'cash or certified check.'" Id. at 352. Accordingly, the "general

rule" articulated in Perry was not essential to the holding in that case, and, therefore, as the trial court correctly noted, is non-binding dicta.  See In re Estate of Norton, 135 N.H. 62, 64 (1991).

Moreover, New Hampshire law is clear that "absent a competitive bidding statute," which, here, the Town does not have, "cities and towns are free to exercise discretion in determining what property to sell and how to sell it," and that, because "the decision by a [municipality] to accept a bid on the sale of municipal real estate has been said to be discretionary, . . . [a] sale cannot be avoided unless the plaintiff shows that the decision was arbitrary, capricious, unjust, or illegal."  Toy v. City of Rochester, 172 N.H. 443, 449-50 (2019) (quotations and brackets omitted) (observing that such discretion can include the ability to reject a higher bid in favor of a lower one); see also Irwin Marine, Inc. v. Blizzard, Inc., 126 N.H. 271, 274-75 (1985) (observing that "[t]he judiciary's role should not be to write competitive bidding procedure into municipal sales on a case-by-case basis").  Accordingly, Emanuel's reliance on Perry, and the inapposite or non-binding cases cited therein, is misplaced.

Next, Emanuel argues that "if the Town intended to consider non-price factors, . . . it had a duty to put those criteria into its Notice of Offer to Sell."  Accordingly, he contends that, because the Town did not do so, he was treated unfairly when the Town "rendered a decision awarding the property to a third place bidder on the basis of unpublished decision-making criteria of which [he] had no notice."  We disagree.

As we have observed, "absent a competitive bidding statute, cities and towns are free to exercise discretion in determining what property to sell and how to sell it."  Toy, 172 N.H. at 449 (quotation omitted).  Nonetheless, "a municipality's discretion in matters concerning the sale of public property, even absent a statute, must be bounded by notions of fairness in order that the public interest and public confidence in governmental actions be upheld."  Id. at 449-50 (quotation omitted).  Indeed, even when a municipality is not bound by a competitive bidding statute or ordinance, once it "has chosen a public bidding procedure in the sale of its realty, the public interest and public confidence in government require the municipality to treat all bidders fairly and equally."  Id. at 450 (quotation omitted); see also Irwin Marine, 126 N.H. at 275.

We can discern no unfairness or inequality in the Town's bidding process or decision-making in this case.  The notice of offer to sell expressly states that a bidder's "plans for future development of the Premises . . . may be considered by the Board of [Selectmen] when evaluating the bid proposals."  Further, the Town attached to the notice a summary of the business development district zoning ordinance, which sets forth the Town's specific goals for development in that district.  Additionally, the notice provided, and Emanuel certified that he

4

understood, that "[t]he Town retains the right to reject any and all bids and to waive any formality in the bidding process." Lastly, we note that the bid form, which was attached to the notice, included a section where bidders were asked, but not required, to provide information as to their development plans for the property. We agree with the trial court that, in light of these facts, it is evident that all of the bidders received adequate notice that the Town was interested in the bidders' development plans, and that it retained the discretion to consider such plans when evaluating their bids. Although Emanuel was free to decline to provide such information, as he did, it is not unfair or unequal, on these facts, for the Town to select another bidder who chose to provide development plans that aligned with the Town's development goals. Nor was it "arbitrary, capricious, unjust, or illegal" for the Town to do so in this case. Toy, 172 N.H. at 451 (quotation omitted).[1]

Next, Emanuel argues that the trial court erred when it found "the facts of this case similar to Toy and the case controlling." Emanuel contends that Toy is distinguishable because, in that case, there were "two factors [that] sufficiently notified bidders that the City would be making its decision on considerations other than price: (1) that the Notice of Sale reserved the right to reject any bid 'if deemed to be in the best interests of the City'; and (2) that the Notice of Sale required bidders, in the very next paragraph, to provide information concerning their intended use of the property. These were essential facts controlling the result in Toy, and neither fact was present in this case." (Citation omitted.) We are not persuaded.

As we have explained, and as the trial court found, the express provisions of the notice of offer to sell in this case were sufficient to put all bidders on equal notice that a bidder's "plans for future development of the Premises . . . may be considered by the Board of [Selectmen] when evaluating the bid proposals," and that the Town "retains the right to reject any and all bids." Toy does not require that specific language be used in a notice of offer to sell; it merely requires that, absent a competitive bidding ordinance, the Town, having chosen a public bidding procedure, must "treat all bidders fairly and equally," and may not exercise its discretion in an "arbitrary, capricious, unjust, or illegal" manner. Toy, 172 N.H. at 449-51 (quotations omitted). Here, those requirements have been met, and we are not persuaded that the minor factual distinctions advanced by Emanuel mandate a different conclusion.

Nor are we persuaded that, as Emanuel argues, the presence of a first-in-time tie-breaking provision in the notice of offer to sell implies that the Town

_____

[1] Emanuel's argument that the Town cannot consider the bidders' development plans because the notice of offer to sell provided that the Town may consider such information instead of providing that the Town would consider such information does not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

would only consider bid price, and undermines the notion that the Town might consider the bidders' development plans. First, any such inferences are precluded by the express terms of the notice providing that development plans "may be considered." Second, the presence of a first-in-time tie-breaking provision is not inconsistent with the Town's ability to consider bidders' development plans. Given that bidders were not required to disclose their development plans, the first-in-time tie-breaking provision provided the Town with an objective basis upon which to select a winning bid in the event that there was a tie bid where no bidders opted to provide such plans.

Emanuel also contends that, because the Town has been more specific about non-price decision-making criteria in other bidding contexts, it should have done so here, and its failure to do so was a deliberate attempt to generate interest in the property by misleading potential bidders into thinking that price would be the Town's only consideration. However, the pertinent inquiry is whether this bidding process was fair and equal. See Toy, 172 N.H. at 450; Irwin Marine, 126 N.H. at 275. Whether the Town has taken a different approach in a different context is not dispositive of that inquiry. Moreover, Emanuel's arguments notwithstanding, the notice of offer to sell was simply not misleading — it expressly informed all bidders that their development plans may be considered by the Town when evaluating their bids.

Lastly, Emanuel argues that Severance's bid "should have been rejected as non-conforming," because "it failed to provide the information called for by the Bid Form, while submitting additional, vague, immaterial, non-binding pledges about job creation." We disagree. First, to the extent that Emanuel argues that Severance's bid was non-conforming because it failed to answer one or more of the specific questions pertaining to the bidder's development plans, we note that, even if true, those questions were "not required." Indeed, Emanuel opted not to answer any of them. Nor are we persuaded by Emanuel's argument that Severance's bid was non-conforming because it went beyond the scope of the specific questions asked on the bid form, and because it took the form of "an uncalled-for narrative, not a 'yes or no' answer" to those questions. The notice of offer to sell provided that "[t]he Town retains the right to . . . waive any formality in the bidding process," and invited bidders to "provide information regarding their plans for future development of the Premises." The information Severance provided in his bid form was responsive to that request, and the Town was free to waive any formalities with which it may not have conformed.

Because the additional issues raised in Emanuel's notice of appeal were not briefed, they are waived.  See In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

Hicks and Donovan, JJ., concurred; Houran, J., retired superior court justice, specially assigned under RSA 490:3, concurred.

**Timothy A. Gudas,**
**Clerk**